# RECORD IMPOUNDED

**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3694-20

IN THE MATTER OF J.E.[1]

_____

Submitted September 21, 2022 – Decided September 30, 2022

Before Judges Accurso and Firko.

On appeal from the Superior Court of New Jersey, Law Division, Ocean County, Petition No. 1518-XTR-2020-000006.

Nicholas A. Moschella, Jr., LLC, attorney for appellant J.E. (Nicholas A. Moschella, Jr., on the brief).

Bradley D. Billhimer, Ocean County Prosecutor, attorney for respondent State of New Jersey (Samuel Marzarella, Chief Appellate Attorney, of counsel; Dina R. Khajezadeh, Assistant Prosecutor, on the brief).

PER CURIAM

---

[1] We refer to appellant by his initials in compliance with Administrative Directive #19-9, "Guidelines for Extreme Risk Protective Orders" 9 (Aug. 12, 2019).

Appellant J.E. appeals from the July 9, 2021 final extreme risk protective order (FERPO) entered against him by the Law Division pursuant to the Extreme Risk Protective Order Act of 2018 (Act), N.J.S.A. 2C:58-20 to -32.  We affirm.

I.

On October 8, 2020, a Psychiatric Emergency Screening Service (PESS) crisis worker contacted the Manchester Township police department (MPD) regarding sixty-nine-year-old J.E.'s suicidal statements.  J.E. told the crisis worker he was sitting in a field and was going to kill his dog and then himself.[2] In addition, J.E. stated he had guns and bows and arrows at his home.  PESS notified the MPD that their conversation with J.E. constituted a "credible threat."

After receiving this information, MPD "pinged" J.E.'s location, which was in Plumsted Township.  Police were dispatched to that location and J.E.'s home in Manchester Township, where he was found.  J.E. admitted to the officers that he made suicidal statements to the PESS crisis worker.  One of the officers spoke to J.E.'s wife, who was at the residence.  She had "great concerns for her [spouse] because his behavior lately had been different" and "[h]e was telling her things that she was going to need to know if he wasn't there."  J.E.'s wife also mentioned

---

[2] Specifically, J.E. mentioned he was not going to kill himself today but would on a later date and "no one can stop him."

A-3694-20

she was having an affair with a neighbor and expressed concerns for herself, the neighbor, and J.E. in case he ever found out about it.

J.E. had a "significant amount" of firearms and ammunition in the house, which he voluntarily surrendered to the MPD, along with his Firearms Purchaser Identification Card (FPIC).[3]  Thereafter, J.E. consensually was transported to Community Medical Center by the police.  A municipal court judge, finding J.E. posed an immediate threat and present danger of causing bodily injury to himself or others through use of a firearm, entered a temporary extreme risk protective order (TERPO) against J.E.  The TERPO prohibited J.E. from owning, purchasing, possessing or receiving firearms, ammunition, a FPIC, a permit to purchase a handgun, or a permit to carry a handgun.  The judge considered J.E. was undergoing mental health treatment at the time.

The hearings took place on March 1 and July 9, 2021.  J.E.'s counsel was granted an adjournment after the March 1 hearing date ended in order to obtain J.E.'s psychiatric records.  The investigating officer testified as to his interaction with J.E. and his wife on October 8, 2020.  At the conclusion of the officer's direct testimony, he was asked if he was concerned J.E. was "a danger to himself

---

[3]  J.E.'s wife signed a destruction waiver authorizing her Remington Model 522 Viper be destroyed because she did not want to retain same.

A-3694-20

or to others if he were to own, buy, possess[,] or have access to a weapon." The officer responded in the affirmative. No other witnesses testified.

After the parties rested, the trial court issued a comprehensive oral opinion granting the petition for a FERPO. The court determined the testifying officer was "credible, believable and compelling" and noted his testimony was "bolstered" and "supported" by the medical records and reports moved into evidence.

In applying the eight factors set forth in N.J.S.A. 2C:58-23(f)(1) to (8), the court found by a preponderance of the evidence that J.E. has: (1) a history of threats or acts of violence directed toward others as evidenced by the events that occurred on October 8, 2020, and had an "intent and plan" to harm himself and the dog by the holidays, N.J.S.A. 2C:58-23(f)(1); and (2) a history of use, attempted use, or threatened use of physical force directed towards others, N.J.S.A. 2C:58-23(f)(2), based on the wife's concern her husband might harm her or the neighbor.

The court noted factor three, prior domestic violence orders; factor four, being the subject of a Sexual Assault Survivor Protection Act (SASPA) order; factor five, prior arrests or pending charges; factor six, prior arrests or pending charges or convictions for animal cruelty; factor seven, drug or alcohol abuse or

4

recovery; and factor eight, dealing with the recent acquisition of a weapon, were inapplicable. N.J.S.A. 2C:58-23(f)(3) to (8).

The court highlighted:

> That [J.E.] has significant mental health diagnoses that make him a danger to himself or others, that while he was discharged in a stabilized fashion, that those diagnoses and conditions have not abated, and those type of situations do not spontaneously remit. They require additional treatment. There is an absence of any proof of that additional treatment and there's a significant showing of a need for that additional treatment.
>
> And even though there may have been no episodes, at least documented episodes since [J.E.] was discharged, the danger still exists, the stresses of life, the stresses of the marital discord of divorce, of a variety of other things exist.

A memorializing order was entered. This appeal followed.

Before us, J.E. raises one point:

> THERE DID NOT EXIST SUFFICIENT CREDIBLE EVIDENCE ADDUCED AT THE HEARING TO SUSTAIN THE ENTRY OF A [FERPO] AGAINST [J.E.], PURSUANT TO [ADMINISTRATIVE] DIRECTIVE #19-19, et al.

II.

Our review of the FERPO is guided by our recent holding in In re D.L.B., 468 N.J. Super. 397 (App. Div. 2021). There, we explained that the Act is

intended to address the growing number of mass shootings by removing firearms from those who have shown "red flags" indicative of future violence.  Id. at 400-01.  Our Legislature adopted the Act "to permit family members and others to seek emergent orders to remove firearms from a person who poses a danger to self or others because of a mental health crisis or instability."  Ibid.  The Act was modeled on the existing process for obtaining a domestic violence restraining order.  Id. at 402.

As noted above, the Act establishes eight factors for the trial court to consider when deciding whether issuance of an FERPO is warranted.  N.J.S.A. 2C:58-23(f)(1) to (8).  No factor is determinative.  Instead, after weighing each of the factors, "[t]he court shall issue the FERPO . . . if it finds 'by a preponderance of the evidence at the hearing that the respondent poses a significant danger of bodily injury to the respondent's self or others' by possessing a firearm."  D.L.B., 468 N.J. Super. at 406-07 (quoting N.J.S.A. 2C:58-24(b)).

"The scope of appellate review of a trial court's fact-finding function is limited."  Cesare v. Cesare, 154 N.J. 394, 411 (1998).  We are bound by the trial court's findings "when supported by adequate, substantial, credible evidence."  Id. at 411-12.  When evidence is testimonial and involves credibility questions,

A-3694-20

deference is "especially appropriate" because the trial judge is the one who has observed the witnesses first-hand. Id. at 412. We will not disturb a trial court's findings unless they "went so wide of the mark that the judge was clearly mistaken." N.J. Div. of Youth & Fam. Servs. v. G.L., 191 N.J. 596, 605 (2007).

When deciding to grant a TERPO or FERPO, the Act requires courts to consider eight non-exclusive factors, including whether the individual:

> (1) has any history of threats or acts of violence . . . directed toward self or others;
>
> (2) has any history of use, attempted use, or threatened use of physical force . . . against another person;
>
> (3) is the subject of a temporary or final restraining order or has violated a temporary or final restraining order issued pursuant to the 'Prevention of Domestic Violence Act of 1991,' . . . ;
>
> (4) is the subject of a temporary or final protective order or has violated a temporary or final protective order issued pursuant to the '[SASPA] of 2015,' . . . ;
>
> (5) has any prior arrests, pending charges, or convictions for a violent indictable crime or disorderly persons offense, stalking offense pursuant to [N.J.S.A. 2C:12-10], or domestic violence offense enumerated in [N.J.S.A. 2C:25-19];
>
> (6) has any prior arrests, pending charges, or convictions for any offense involving cruelty to animals or any history of acts involving cruelty to animals;

A-3694-20

(7) has any history of drug or alcohol abuse and recovery from this abuse; or

(8) has recently acquired a firearm, ammunition, or other deadly weapon.

[N.J.S.A. 2C:58-23(f).]

Additionally, courts should consider "any other relevant evidence" before issuing a FERPO. N.J.S.A. 2C:58-24. Pursuant to Guideline 3(d) of Administrative Directive #19-19, at 5, the court must also consider three additional factors, including whether the individual "(9) has recklessly used, displayed, or brandished a firearm; (10) has an existing or previous extreme risk protective order issued against [them]; and (11) has previously violated an extreme risk protective order issued against [them]."

Further, if the court finds one or more of the eleven "behavioral" factors above, Guideline 3(d) permits the court to evaluate four more factors regarding the individual's mental health. Ibid. These "mental health" factors include whether the individual:

(12) has any prior involuntary commitment in a hospital or treatment facility for persons with psychiatric disabilities;

(13) has received or is receiving mental health treatment;

(14) has complied or has failed to comply with any mental health treatment; and

(15) has received a diagnosis of a mental health disorder.

[Ibid.]

"A finding of one or more of the factors may not be enough to support the issuance of a TERPO." In re D.L.B., 468 N.J. Super. 397 at 405.

Having carefully reviewed the record and considering J.E.'s arguments in light of the Act and legal precedents, we affirm for the reasons set forth in the trial court's comprehensive and well-reasoned decision. As the court found, there is ample evidence in the record on which to conclude that J.E.'s ownership, possession, purchasing, or receipt of firearms presents a danger to himself and others. The court considered the eight factors set forth in N.J.S.A. 2C:58-23(f) and explained its reasoning as to each factor based upon the substantial credible evidence in the record. In addition, the court found the three factors in Administrative Directive #19-9, Guidelines 3(d)(9) to (11), did not apply because there was no evidence that J.E. recklessly used, displayed, or brandished a firearm or had a previous TERPO or FERPO issued against him.

Applying the final four factors in Administrative Directive #19-9, Guideline 3(d), J.E. has been diagnosed with mental health disorders. The court

A-3694-20

found no evidence of any prior involuntary commitment in a hospital or treatment facility for psychiatric disabilities. Based on the testimony and evidence, the court determined J.E. had an episode in "the 1980[']s" where he "tr[ied] to hurt others," which was "triggered by an apparent separation." The court noted relative to the matter under review J.E. was "involuntarily committed" at a behavioral health facility for a "significant period of time, [fourteen] . . . days." The records stated J.E. was stabilized after "a significant period of time."

Upon discharge, the court emphasized there was "inadequate proof" presented by J.E. that he was compliant relative to taking his medication and following up with additional mental health treatment. The court weighed this factor against J.E. Finally, the court reiterated J.E.'s mental health disorders include "severe suicidal ideations" and other disorders having "manic features" militating against him and in favor of issuance of the FERPO. We discern no reason to interfere with the trial court's findings of fact or conclusions of law. Defendant, of course, may apply to obtain relief from the order on proof he no longer poses a significant danger to himself or others by reason of his possession of a firearm. See N.J.S.A. 2C:58-25.

To the extent we have not specifically addressed any of J.E.'s remaining arguments, we conclude they lack sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

11